PROVIDED TO MAYO CORRECTIONAL INSTITUTION
_____ (DATE) FOR MAILING
_____ (STAFF INITIAL) _____ (I/M INITIAL)

FILED

2022 NOV 28  PM 2:48

United States District Court
Middle District of Florida
Ft. Myers Division


Jimmy Lee Kroft
        Plaintiff

VS                               Case No.: 2:22-cv-00750-JLB-KCD

1. Derek Snider
2. Jeffrey Robinson
3. Dawson (F.N.U.)
4. Brock (F.N.U.)
5. Gahrmann, Stephen
6. Crawford (F.N.U)
7. Raymond Walton
8. "JANE Doe" #1
9. "JANE Doe" #2
10. "JANE Doe" #3
        Defendants


42 U.S.C.A. § 1983 Civil Rights Complaint


I. "Plaintiff Information"


Name: Jimmy Lee Kroft
DC #: X25395
Institution: Mayo C.I.
Street Address: 8784 W. US 27
City, State, Zip: Mayo, FL. 32066

"Status": Plaintiff is a convicted state prisoner

II. "Defendant's Information"

"Defendant #1"

Name: Derek Snider
Current job title and location: Warden at Charlotte
Address: 33123 Oilwell Rd
City, state, Zip: Punta Gorda, FL. 33955

"Defendant #2"

Name: Jeffrey Robinson
Current job title and location: Assistant Warden at Santa Rosa C.I.
Address: 5850 East Milton Road
City, State, zip: Santa Rosa, FL. 32083

"Defendant #3"

Name: DAWSON (F.N.U.)
Current job title and location: Assistant Warden at Charlotte C.I.
Address: 33123 Oilwell Rd.
City, state, zip: Punta Gorda, FL. 33955

"Defendant #4"

Name: Brock (F.N.U.)
Job title & location: Head Classification at
                    Charlotte C.I.
Address: 33123 Oilwell Rd.
City, State, Zip: Punta Gorda, FL. 33955

"Defendant #5"

Name: Stephen Gahrmann
Job title and location: Captain at Charlotte C.I.
Address: 33123 Oilwell Rd
City, State, Zip: Punta Gorda, FL. 33955

"Defendant #6"

Name: Crawford (F.N.U.)
Job title & location: Correctional officer at
                    Charlotte C.I.
Address: 33123 Oilwell Rd
City, State, Zip: Punta Gorda, FL. 33955

"Defendant #7"

Name: Raymond Walton
Job Title & Location: Correctional officer at
                    Charlotte C.I.
Address: 33123 Oilwell Rd
City, State, Zip: Punta Gorda, FL. 33955

"Defendant # 8"

Name: "Jane Doe" #1
Current job title and location: Was the psychiatric
                                doctor at Charlotte
Address: 33123 Oilwell Rd
City, State, Zip: Punta Gorda, FL. 33955

"Defendant #9"

Name: "Jane Doe" #2
Current job title and location: WAS a psych
                                counselor at Char.
Address: 33123 Oilwell Rd
City, State, Zip: Punta Gorda, FL.

"Defendant #10"

Name: "Jane Doe" #3
Current job title and location: WAS a psych
                                counselor at Char.
Address: 33123 Oilwell Rd
City, State, Zip: Punta Gorda, FL. 33955

    * All named Defendants are being sued in
    their individual capacity

III. "Administrative Remedy"

    The Plaintiff has fully exhausted his

4

administrative remedies before pursuing
this action

IV. "Previous Lawsuit History"

Plaintiff has previously filed (3) 1983
lawsuits in the "US District Court in the
Ft Myers Division" as well, pertaining to
seperate incidents but all all also
occuring at Charlotte C.I. as well, Plaintiff
has never previously filed any action in
either Federal or State courts concerning
this incident in particular. Plaintiff's 1st
lawsuit is still actively pending, case # 2:20-cv-
396; Plaintiff's 2nd lawsuit is still actively
pending, case # 2:22-cv-275; and the
Plaintiff's 3rd lawsuit is also still actively
pending, case # _____.

V. "Statement of Ultimate Facts"

"Place of Occurrence."

   Began using force on Plaintiff in front
of the E-dormitory

"Date and Time of occurence"

   Use of force incident occured in this
case on December 30th, 2020 between 9am-2pm

1.) While housed in the S.H.O.S. cell following the Plaintiff's declaration of a psychological emergency on 12/21/2020, following a deprival of the Plaintiff's Rights to mail out his legal mail and other issues which the Plaintiff describes as an "on-going campaign of harrassment, retaliation, and abuse" against him, Defendant Stephen Bahrmann came to the Plaintiff's psych cell on December 28th, 2020 and began harassing and threatening the Plaintiff. Mr. Bahrmann is a Defendant in the Plaintiff's 1st lawsuit; part of an incident unrelated to this current lawsuit, Defendant Bahrmann told the Plaintiff to "do us all a favor and just kill yourself mothafucker! I'm gonna make sure your ass gets discharged from this S.H.O.S. cell and then we are gonna get ya!"

2.) Although the Plaintiff spoke to the psych doctor and two psych counselors about wanting to commit suicide because of the ongoing abuse towards him at Charlotte by multiple officers, and because the administration was involved in a corrupt cover up ring and was ignoring the Plaintiff's reports of retaliation and abuse against him, at times even lying to

the Plaintiff's family members about his
safety, the psychs became unwilling to
properly treat and help the Plaintiff with
his mental issues following the news that
the Plaintiff was actively filing suit against
multiple staff members at Charlotte C.I.,
claiming that the Plaintiff's problem was a
disciplinary problem and not a mental
despite the Plaintiff's mental history and
plea for help. All three of the women who
were present on 12/28/2022 during this
meeting in which the Plaintiff was
pulled out of his psych cell and
interviewed. They failed to treat Plaintiff.

3.) On December 30th, the psych doctor
once again made her rounds in the
infirmary visiting the Plaintiff's psych
cell very briefly, asking him how he was
feeling. The Plaintiff responded "the same,
still feeling suicidal and homicidal mmm!"
The psych doctor asked the Plaintiff if
he wanted to come out and talk in which
he responded "No, I'm asleep, been up
for days, not feeling like coming out, you
can talk to me right here!"

4.) Despite informing the psychs on December
28th that he needed further counseling and
treatment, desired to go to a CSU or TCU

long term program because of his severe mental
trauma and instability stemming from the
abuse and harrassment, the Plaintiff was
unexpectantly discharged from the S.H.OS.
without having been properly treated,
following Mr. Gahrmann's personal visit
in which he had informed the Plaintiff
that he would indeed "get him discharged
from the S.H.O.S. cell and get him!"

5. Immediately after being discharged from
the psych cell and while still in the medical
multi building, the Plaintiff seen officer
Crawford in the medical lobby, who began
smiling and stated "we got you now!" As
the Plaintiff was heading towards the
exit door of the medical building, Mr.
Crawford got on his radio and alerted
other officers of the Plaintiff's release,
and in what direction he was headed.

6. As the Plaintiff neared E-dormitory
headed towards his new housing, officer
Walton, who the Plaintiff had been having
ongoing issues with because of his
retaliations for writing multiple grievances
on, and also filing a lawsuit against
him, began running towards the Plaintiff
from the captain's office area, screaming at

the Plaintiff to "stop and put your fucking
hands on the wall!" The Plaintiff placed his
hands on the side of the canteen building
in front of E dormitory, complying to the
officer's order.

7.) Mr. Walton began making threats towards
the Plaintiff, claiming to have family in
the Jersey area with mafia ties, and
also stating that he had gang member inmate
friends that were gonna stab me up for
the Plaintiff continuing documentation of
his abuse and corruptive behaviors towards
him. As Walton was conducting his pat
search of the Plaintiff, he took the Plaintiffs
phone number and address book. Mr. Walton
began making threats, to have someone attack
his (Plaintiffs) family members while holding
up the Plaintiffs phone book.

8.) Plaintiff requested his phone book back
after being physically deprived of it during
Walton's search, and Walton told the
Plaintiff, "that shit is mine now!" Walton
threw it on the ground towards the feet
of multiple gang member inmate friends
of Walton's that he allowed to run around
the compound in exchange for favors,
and ordered the Plaintiff to go to his

dorm, and that he had someone that would be to see him, implying in a threatening manner that his gang buddies would be paying the Plaintiff a visit again. Plaintiff began asking over and over for the officer to return his personal phone & address book which he denied. At this time officer Crawford then approached the Plaintiff walking up beside the Defendant Walton, and pulled out his can of pepper spray ordering the Plaintiff to go to his dorm. Plaintiff then informed Crawford that he needed his phone book back, and Crawford responded "we took that shit bitch, and once again threatened the Plaintiff with physical harm if he didn't start walking towards E dorm. Plaintiff complied, walking at pepper spray point backwards towards E dorm, removed from his phone book by force, Walton then told the gang member inmates, a lie to get them to attack him and stab him once he got in the dorm, claiming that he was a snitch, and they would be allowed to clean the Plaintiff up!.

9. Once in the blind spot area, officer Crawford began spraying the Plaintiff for absolutely no reason, and then

officer Walton and Crawford attacked the Plaintiff while he was blinded and on the ground.

10. Crawford then hit his panic button and lied, stating that the Plaintiff had just committed a battery on officer Walton by spitting in his face and then charging at the both of them.

11. Multitudes of officers responded to the call, and began beating the Plaintiff although he was face down on the ground, blinded with pepper spray, not acting out in any form of aggressive or resistive manner, was being pinned to the ground by the huge officer Crawford who towered nearly 7 foot tall and weighs approx 300 pds, accompanyed by the very large Walton who had the Plaintiff pinned and cuffed behind the back as well.

12. The Plaintiff was lifted to his feet after multiple officers punched, kneed, and kicked him, then forced to bend down to his waist because of the arm bar manuever that Crawford and another officer sgt had the Plaintiff in, clearly with intent to severly injure the Plaintiff's shoulders, a common torture

11

tactic utilized by abusive officers.

13. Plaintiff was forced to walked with extremely tight shackles on his cnkles that cut into his flesh, bent over in an arm bar/ arm lock by Crawford and another sgt officer that the Plaintiff plans to later identify nearly/approx 150-200 yards from E dorm, all the way across the prison compound to the medical area, and then throw into an S.H.O.S. without any property and forced to strip even though he wasn't S.H.O.S. status. A whole mob of officers were present when the excessive force was being used on the Plaintiff, and all failed to intervene and protect the Plaintiff, and all being deliberatly indifferent to his medical needs. The use of force camera captured the officers forcing of the Plaintiff to walk bent down to his waist while they jacked his arms up backwards injuring the Plaintiffs rotary cuffs in both shoulders. These injuries turning out to be permanent injury and giving the Plaintiff constant pain every day now.

14. Plaintiff was illegaly thrown in a psych cell, deprived of his clothing and

all property despite not even being SHU.s.
status. This was done by officers on
purpose to punish him, and deprive
him of his property so that he couldn't
contact his family members. It wasn't
until the officer in the infirmary informed
the Plaintiff that he wasn't even supposed
to be placed in the psych cell that the
Plaintiff realized what they were doing.

15. After explaining to that officer, officer
Perline, of what was going on between
him and a group of abusive and
dirty corrupt officers at Charlotte and
how the administration was also actively
involved in a corrupt campaign against
the Plaintiff for reporting their actions in
grievances, etc., officer Perline agreed to
give the Plaintiff grievances and a pen
in the psych cell, allowing the Plaintiff
an opportunity to document everything in
grievances, and then called officer Quegan
in classification to come pick up the
grievances.

16. The Plaintiff was brought a DR for
"Battery on an officer" and found guilty
based on the officer's statement alone
and no physical evidence to support it.
Plaintiff was not allowed to present any

of his previously written grievance copies against this very same officer he was now being set up by, nor did the investigator go get the video footage that captured the robbery of the Plaintiff's phone book by Walton beside the canteen building where Walton searched the Plaintiff. The investigator claimed that the video was unavailable because that camera was being worked on during the incident, all of it lies, he was down with it all...

17. Plaintiff was placed on CM 1 following a finding of guilt by the DR hearing Team, which was a two person team consisting of one of the Defendants from the Plaintiff's lawsuit, Mr. Noriega from the 1st lawsuit. Mr. Noriega had previously supervised the beating of the Plaintiff on December, 4th 2018 which sent him to the hospital with more than 7 broken bones and hemmoraging in his head.

18. Plaintiff was placed on CM right there at Charlotte C.I, who continued to refuse to transfer the Plaintiff, holding him on CM for over 18 months locked in a cell, torturing him by placing him illegally on cell and property strip, placing him illegally

or management meals called "Loaf",
which the officers made sure to spit in
or put chemicals, piss, and feces in
before giving the Plaintiff. Officers
would place him on cell strip leaving
him with only boxer shorts in 30°
degree weather in a cell that had a
window that wouldn't close and no
working heater, no mattress or pillow,
no bed linens, and no property,
when the Plaintiff would be placed on
property restrictions for no reason; all
his property of value would be missing
upon return. The Plaintiff's visitations
were also taken away for a year.

19. Plaintiff asserts that he attempted to
commit suicide by using his face mask
strings to make a rope and hung it
from the light fixture, and while hanging
temporary, the rope broke! Plaintiff
begged to see a psych and tried over
and over to declare a psychological
emergency which they ignored.

20. Plaintiff suffered for over 20 months
straight Allowing this attack before finally
being released from CM for "good behavior"

15

21.                    Claims / Counts

                    Count 1 Claim

          Violations of 42 U.S.C. §
          1983 for "excessive force"
          (Against Defendants Walton,
          Crawford, and several "John Does")

          Defendants Walton, Crawford, and several
"John Does" committed "excessive force"
when: Walton when he participated in
physically beating the Plaintiff after
officer Crawford utilized force against
the Plaintiff by spraying him with
chemical agents, and then he along
with officer Crawford slammed the
Plaintiff to the ground and beat him.
The Plaintiff sustained injuries as
a result, and violated the Plaintiffs
8th Amendment Rights.

22. Defendant Crawford violated the
Plaintiff's 8th Amendment Right by
utilizing "excessive force" when he
sprayed the Plaintiff with chemical
agents, slammed him to the concrete
along with Walton then began physically
beating the Plaintiff with closed fists and
st

stepping on the Plaintiff, pressing his knee into the Plaintiff's already previously fractured rib, exasperating the injury. Mr. Crawford also utilized excessive force when he utilized an arm bar type manuever along with a "John Doe" officer and forcing the Plaintiff to walk over 100 yards, with his arms jacked up behind his back although the Plaintiff was complying to all orders and unresistant, injuring the Plaintiff's shoulders. Mr. Crawford utilized force in a malicious way with malice intent purposely to create permanent injury to the Plaintiff's shoulders and already fractured rib.

23. Several "John Doe" officers also participated in using force against the Plaintiff and he plans to amend this complaint and, add them once gaining further information concerning the officers actual names.

24.

Count 2 Claim

Violations of 42 U.S.C. § 1983 for "Supervisor liability"

(Against Mr. Snider, Mr. Robinson,

Mr. Dawson, Mr. Brock, Mr. Bahrmann)

All the above named Defendants, violated the Plaintiff's 8th Amendment Rights, when the committed supervisor liability issues when they knew of the Plaintiff's complaints of abuse by staff and retaliation issues constituting violations continuously of the Plaintiffs Constitutional Rights, and instead of acting in a way to prevent further violations, actually facilitated the Plaintiff's abuse when they encouraged the staff at Charlotte C.I. to attack, retaliate, abuse, and torture the Plaintiff by not acting out when the Plaintiff made complaints via grievances and verbally direct to the above named Defendants, and by instigating the same violations. Plaintiff was informed by all the above Defendants that they ran their own program of policy and procedure at Charlotte C.I. where they keep what they described as their "problem inmates" instead of transfering them, and encouraged further attacks, abuse, retaliation, and torture against those inmates they labeled merely because they excersized their

Constitutional Rights by documenting
violations via the inmate grievance
systems. The Plaintiff was offered
no relief from this cruel and unusual
punishment, and only escaped the
torture, abuse, retaliations, etc. by
completing the CM program he was
unrighteously placed on by charlotte
officials for his "good behavior",
and then finally was he transferred
away.

   All Defendants therefore listed in
this complaint in ranking supervisory
positions are guilty of supervisor
liability, a violation of 42 U.S.C. §
1983.

25.           Count 3 Claim

        Violations of 42 U.S.C. §
        1983 for "Failure to Protect"
        (Against Mr. Snider, Mr. Robinson,
        Mr. Dawson, Mr. Brock, Mr. Gahrmann,
        and all "Jane Does")

        All above named Defendants are
guilty of failing to protect the
Plaintiff.
        Mr. Snider, as the warden of

Charlotte C.I. and having knowledge of
the abuse against the Plaintiff because
of the grievance complaints documented
by the Plaintiff in which Mr. Snider
was aware of but failed to protect
the Plaintiff by his non actions in
the situation, and because of Mr.
Snider's failure to protect the Plaintiff,
the Plaintiff was once again violated
and acquired injury more than
minimum. Plaintiff asserts that he
also verbally addressed his complaints
in person to the warden on several
occassions during his inspection rounds,
and this was to no avail. It also
should be known that the Plaintiff's
family filed a complaint to the warden
as well, also to no avail.

26. Mr. Robinson failed to protect the
Plaintiff as the head of security at
Charlotte C.I., the colonel, after being
aware of the Plaintiff's allegations and
complaints and making no effort to
protect the Plaintiff, resulting in
further violations of the Plaintiff's
Constitutional Rights and injury
resulting in this incident and 1983
complaint.

27. Mr. Dawson is guilty of failing to protect the Plaintiff as the assistant warden of Charlotte C.I. and having been alerted of the abuse against the Plaintiff, and failing to protect him. Mr. Dawson responded to several grievances of complaints but giving responses that resulted in no protection for the Plaintiff. The result of this is that the Plaintiff was once again attacked and injured resulting in this lawsuit. Plaintiff asserts that he personally verbally informed Mr. Dawson of the actions of the staff at Charlotte but Mr. Dawson did absolutely nothing to end the actions against the Plaintiff by the administration and staff at Charlotte C.I.

28. Mr. Brock is guilty of failing to protect the Plaintiff as the head of classification, having knowledge of the abuse and violations against the Plaintiff, and being in a position to protect the Plaintiff, yet failing to do so resulting in the attack and injuries that manifested this complaint.

21

29. Mr. Gahrmann is guilty of failing to protect the plaintiff after having also being notified and fully aware of the ongoing campaign of harrassment, abuse, torture, and retaliatory actions against the Plaintiff, partly of which he himself facilitated against the Plaintiff, and also actually participated in, and failed to protect the Plaintiff from further abuse, torture, retaliatory actions, and violations of the Plaintiff's Constitutional Rights, resulting in the incident in which this lawsuit is now the result.

30. All "Jane Does" are guilty of failing to protect the Plaintiff after being in positions as the psych doctor (Jane Doe #1), and the psych counselors (Jane Does #2 & 3) and failing to protect the Plaintiff after he reported the abuse to all three and all three refused to protect the Plaintiff, and by failing to properly perform their job duties and releasing the Plaintiff from the psych cell unrighteously in order for the officers to attack the Plaintiff once again. Plaintiff asserts that he informed the "Jane Does" of

the abuse, his suicidal and homicidal
thoughts because of this continuation
of abuse, and his desire for further
long term treatment and more frequent
counseling sessions, and they all
responded by failing not only to properly
treat the Plaintiff for his psychological
issues related to the continuation of
abuse, ect. but also failed to protect
the Plaintiff from the administration
and staff at Charlotte C.I. after
he reported their actions to them, and
furthermore discharged the Plaintiff
from the S.H.O.S. cell so that he
could be attacked again... The Plaintiff
was attacked immediately following his
release from the S.H.O.S. cell
resulting in the incident that now
causes this lawsuit action.

31.              Count 4 Claim

        Violations of 42 U.S.C. §
        1983 for "Failure to Intervene
        (Against Mr. Snider; Mr. Dawson;
        Mr. Robinson; Mr. Brock; Mr.
        Gahrmann; all "Jane Does" and
        "John Doe" to be named in the
        future)

Mr. Snider failed to intervene after
having been alerted and very well aware
and familiar with the ongoing reports
of abuse and retaliation by multiple
staff members working at Charlotte
C.I. against the Plaintiff, at times
so bad that bones have been broken,
and his life placed in jeopardy in
the past and all the way leading
up to that event to this lawsuit
manifests from. Mr. Snider answered
grievances that the Plaintiff wrote but
failed to intervene, nor discipline, the
staff members that continued to violate Mr.
Kroft's Constitutional Rights, and by failing
to intervene in a way suitable to resolve
the ongoing conflict, Mr. Kroft was once
again the victim of excessive force and
sustained a more than de minimus
injury from the cruel and unusual
punishment that he continuously endured,
including the attack, abuse, and excessive
force that was utilized against him on
12/30/2019, resulting in this lawsuit.
    Mr. Robinson, Mr. Dawson, Mr. Brock,
Mr. Gahrmann, and all other potential
"Jane" and "John Does" all failed to
intervene as well by either ignoring
the Plaintiffs complaints and reports
of abuse and attacks, or by actually

standing by the Plaintiff, after force was used on him on 12/30/19 to the extent that it became to an excessive amount constituting a violation of his 8th ammendment Rights for cruel and unusual punishment when guards placed Mr. Kroft in arm bar manuevers after he was already submitting and being submissive to the officer's orders, to the extent that the Plaintiff's Rights were violated and he suffered injury to his shoulders that constitute the more than de minimys injury rule, resulting in this lawsuit

32. Mr. Dawson also failed to intervene after having been alerted and aware of the ongoing campaign of abuse and harassment against the Plaintiff, by way of grievances that the Plaintiff wrote documenting the incidents and actions of the accused staff members at Charlotte C.I., and also when the Plaintiff verbally addressed his concerns to Mr. Dawson face to face on several occassions. Mr. Dawson, along with several other staff members acted out and responded to the Plaintiff's pleas for help in such a

that no resolution or protective
messures were made to grant
the Plaintiff relief. Because of
Mr. Dawson's failure to intervere, the
Plaintiff was once again attacked
and his rights violated during
the use of force that resulted in
this complaint.

33.    Mr. Brock, being the head of
Classification and having knowledge
of what was transpiring at Charlotte
between the Plaintiff and certain
named staff, and knowing the
danger the Plaintiff was in but
purposely refusing to transfer the
Plaintiff or offer any other
form of relief or resolution which
resulted in this attack and injury
named in this complaint, also
failed to intervene.

34.  Mr. Robinson, as the acting Colonel
which has a job duty as the head
of security failed to intervere, when
he acted in an unproffessional
mannor concerning the situation
between the named staff at Charlotte
and the Plaintiff, where the Plaintiff

made claims of retaliation and
abuse by staff at Charlotte C.F
and the colonel failed to intervene
in a way that would prevent the
attack and resulting injury by
officers on 12/30/2019, resulting
in this complaint.

35. It should be also noted in this
complaint that several Jane and
John Does were present and hope
to be identified later, during the
attack on 12/30/2019, failing to
intervene when officer Crawford and
a John Doe Sgt, utilized excessive
force on the Plaintiff when they put
the Plaintiff in an arm bar, forcing
him to bend to his mid section
and walk across half the compound
in handcuffs and shackles, causing
injury to the Plaintiff's shoulders.


36              Count 5 Claim

Violations of 42 U.S.C.A. § 1983
for Conspiracy to commit cruel
and unusual punishment against
the Plaintiff against officer

Walton and officer
Crawford, Captain Gahrmann

37. Officers Walton and Crawford
conspired to commit cruel and
unusual punishment against the
Plaintiff when they planned to "set the
Plaintiff up" after Captain Gahrmann's
assistence was granted to get the
Plaintiff released from the S.H.O.S.
cell so that they could attack the
Plaintiff, give him a falsified battery
on an officer charge, use chemical
agents on the Plaintiff, physically
abuse the Plaintiff, etc.

38. Mr. Gahrmann is guilty of
conspiracy when he came to the
Plaintiff's S.H.O.S. cell on 12/28/19,
advising the Plaintiff that he was
going to get him discharged in
order for them to set him, referring
to the officers who were waiting to
attack him (Crawford and Walton)
following his release from the S.H.O.S.
cell. Mr. Gahrmann advised the Psych
doctor and counselors that the
Plaintiff was faking his mental issues,
and was merely a disciplinary problem,

manipulating the psych staff members
to go against the Plaintiff and not
believe him, therefore resulting in
the Plaintiff's discharge from the
S.H.O.S. cell, and then briefly
following, the attack on the Plaintiff
and excessive force resulting in
injury, that therefore resulted in
this complaint.

## VI.              Injuries

37. Following the use of force in
an excessive manner, the Plaintiffs
shoulders were injured in such a
way that his rotary cuffs were
damaged; now having permanent
injury pain, and also the shoulder
now becomes dislocated and has
to be popped back into place when
it occurs, the Plaintiff has been
to see the doctor and made reports
of the injury, but not much has
been done, or can be done to fix
the situation.

38. The Plaintiffs previous rib
fracture was further injured when
officials physically beat the Plaintiff

after he complied to their orders to
lie down and submit to hand
restraints, and also after he was
cuffed and they physically attacked him
briefly before turning on the use of
force camera, by way of punching him
and kicking him, as well as by
standing on his back area and
pressing their body weight down on
the Plaintiff, specifically naming
Crawford. The Plaintiff was treated
for a fractured 6th rib by
medical staff.

39. The Plaintiff suffered further
mental trauma and anguish following
this attack, and is speaking with
counselors working with the Department
of Corrections.

VII.    Statement of Claim of
Constitutional Rights Violations

40. The Plaintiff incorporates by
reference all of the facts stated
within subsection V into each
claim asserted.
    Defendants all committed violations
of the Plaintiffs 8th Amendment Rights.

## "VIII. Relief Sought"

41. The Plaintiff is seeking judgment against all Defendants for compensatory and punitive damages, as well as nominal damages if and when they apply. Plaintiff asserts that indeed he is entitled to a monetary reward for the injuries that he acquired, directly stemming from the violations of his Constitutional Rights by all the named Defendants, as well as any future named Defendants that may be added to this complaint following future discovery of any issues of liability.

42. The Plaintiff is seeking a trial by jury for all triable offenses.

43. The Plaintiff is seeking a transfer to another state facility, or Institution of his choice.

44. All damages awarded to the Plaintiff to be held jointly and severely with one another.

## IX. "Plaintiff's Declaration and Warning"

I, Jimmy Lee Kroft X25395, acting as a pro se litigant, hereby certify under penalty of perjury, that to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose such as to harass, cause unnecessary delay, or, needlessly increase the cost of litigation; (2) is supported by existing law; (3) the factual contentions have evidentiary support after a reasonably provided opportunity for further investigation or discovery, and (4), the complaint otherwise complies with the requirements of all Rule 11.

(5)
_____

Jimmy Lee Kroft X25395
Mayo Correctional Inst.
8784 US Hwy 27 West
Mayo, FL 32066

32

## Certificate of Service

I, Jimmy Lee X25395, pro se, hereby certify that the foregoing 42 USCA 1983 complaint was given to prison legal mail officials at Mayo Correctional Institution annex for mailing via the US Postal Services to:

United States District Court
Middle District of Florida
2110 First Street
Ft. Myers, FL 33901

Executed this ___ day of November, 2022.

(S)_____

Jimmy Lee Kroft x25395
Mayo C.I.
8784 US Hwy 27 West
Mayo, FL. 32066

33.